```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES GEORGE KOT                  :      CIVIL ACTION
                                  :
       v.                         :
                                  :
HONORABLE ROBERT K.               :
KILLIAN, JR., et al.              :      NO. 10-7305
```

MEMORANDUM

McLaughlin, J.                                      December 12, 2011

      The suit arises from the alleged non-payment of debts the plaintiff incurred while caring for his patient Gaffin Coffin.  The plaintiff filed suit pro se on December 15, 2010 and then filed an amended complaint on February 22, 2011.  He names six individuals and the Trust Under Indenture Dated April 30, 1957 ("the Trust") as defendants.  The six individuals are Wayne Cowell and Christen Rinalid, Bank of America trust administrative officers; Vanessa Avery, a private attorney who provided legal services to Bank of America; The Honorable Robert Killian, the Probate Court Judge for the District of Hartford Connecticut; The Honorable Paul Knierim, the Connecticut Probate Court Administrator; and Glen Coe, a private attorney for Coffin.  All of the defendants have filed motions to dismiss.  The Court now grants those motions.

      In addition, the plaintiff has filed a motion to amend his pleadings by dismissing the Trust and adding unnamed trustees.  The plaintiff is permitted to dismiss the Trust, but

the Court will deny the motion to add additional defendants. The Court also denies the plaintiff's motion to reconsider an order denying the plaintiff's motion for sanctions.

I.   Facts as Alleged in the Plaintiff's Complaint

The essence of the plaintiff's claim is that he spent $69,814.98 between May and September of 2010 on behalf of Gavin Coffin, a patient under his care. This money was used for both medical treatment and living expenses. The plaintiff anticipated that he would be paid for these outlays by the Trust, as Coffin is one of its beneficiaries. The Trust has not paid the plaintiff. In addition, Coffin fired the plaintiff, and the plaintiff alleges that a form allowing disclosure of Coffin's medical records was signed under duress and in violation of state privacy law.

The plaintiff alleges that the defendants engaged in constitutional violations, fraud, intentional and negligent infliction of emotional distress, conspiracy, and RICO violations in the non-payment of these expenses. He asks for monetary relief and the injunctive relief that the Trust be ordered to pay him or that he be provided an opportunity to litigate this suit. In addition, the plaintiff requests appointment of counsel, in part because he states that this is both a criminal and civil case.

II.  Analysis

The Court considers separately each of the three motions to dismiss filed in this case and the two motions filed by the plaintiff.  The plaintiff has responded to each of the motions; because he is a pro se litigant, the Court also considers arguments on his behalf.

    A.  The Trust Defendants' Motions to Dismiss

Cowell, Rinalid, Avery, and the Trust (the "Trust Defendants" or the "Moving Defendants") filed a motion to dismiss on March 14, 2011 (Docket No. 32).  The plaintiff filed a response on May 2, 2011 (Docket No. 41).

The Trust Defendants move to dismiss under 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rule of Civil Procedure.  The plaintiff has moved to withdraw the Trust itself as a defendant, and is permitted to do so.  Therefore, the Court does not address the defendants' arguments to dismiss the Trust.  See Section II.D, infra.

Because it is a threshold matter, the Court begins with the Trust Defendants' arguments under Rule 12(b)(1) that this Court lacks subject matter jurisdiction. Society Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175 (3d Cir. 2000).

1. <u>Subject Matter Jurisdiction</u>[1]

The Trust Defendants argue that this Court lacks subject matter jurisdiction under the <u>Princess Lida</u> doctrine, which "prevents a court in which an action is filed from exercising jurisdiction when a court in a previously filed action is exercising control over the property at issue and the second court must exercise control over the same property in order to grant the relief sought." <u>Dailey v. Nat'l Hockey League</u>, 987 F.2d 172, 175 (3d Cir. 1993). <u>Princess Lida</u> is a "mechanical rule" that applies if the requisite showing is made that: 1. the litigation in both fora is in rem or quasi in rem, and 2. the relief sought requires the second court to exercise control over property already under control of the first court. <u>Id.</u> at 176.

Although the plaintiff is contesting non-payment by the Trust, he has brought suit against individuals beyond those who administer the Trust. Possible relief granted by this Court could come from those individuals or could simply identify the plaintiff's right to funds from the Trust. Because the plaintiff

---

[1] "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991). If the factual existence of subject matter jurisdiction is attacked, a district court does not need to accept the allegations in the complaint as true, and may make factual findings beyond the pleading to determine jurisdiction. <u>CNA v. United States</u>, 535 F.3d 132, 145 (3d Cir. 2008); <u>Morstensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). The court should construe the complaint broadly and liberally, especially when presented by a pro se litigant.

seeks only "the right . . . to participate in the res or as to the quantum of his interest in it," the Court is not convinced that it lacks subject matter jurisdiction under the Princess Lida doctrine.  Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 467 (1939).

The Trust Defendants also argue that the Court should abstain from exercising jurisdiction under the Younger doctrine.  This doctrine says that federal courts should not interfere with pending state judicial proceedings unless extraordinary circumstances exist for doing so.  Younger v. Harris, 401 U.S. 37 (1971).

Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" which "rarely should be invoked."  Gwynedd Props., Inc. v. Lower Gwynedd Twp., 970 F.2d 1195, 1199 (3d Cir. 1992) (quoting Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992)).  Because of the breadth of the claims raised by the plaintiff against individuals not involved directly in the probate proceeding, the Court declines to abstain from exercising jurisdiction under Younger.

2. <u>Personal Jurisdiction</u>[2]

The Trust Defendants also move to dismiss under Rule 12(b)(2), arguing that this Court lacks personal jurisdiction over them.

Under Federal Rule of Civil Procedure 4(k), a district court may exercise personal jurisdiction "over non-resident defendants to the extent permissible under the law of the state where the district court sits." The Pennsylvania long-arm statute provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Const. Stat. § 5322(b). Thus in Pennsylvania, a court must determine, whether, under the Due Process Clause, the defendant has such "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions fo fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).

Where a defendant has "continuous and systematic contacts" with the forum, a court may exercise general jurisdiction over a defendant, even if those contacts are

---

[2] Once challenged, the plaintiff bears the burden of establishing personal jurisdiction. <u>D'Jamoos v. Pilatus Aircraft Ltd.</u>, 566 F.3d 94, 102 (3d Cir. 2009). Unless the district court holds en evidentiary hearing, the plaintiff "need only establish a prima facie case of personal jurisdiction" and is entitled to have his "allegations taken as true and all factual disputes drawn in [his] favor." <u>O'Connor v. Sandy Lane Hotel Co.</u>, 496 F.3d 312, 316 (3d Cir. 2007).

6

unrelated to the plaintiff's claim.  <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 416 (1984).  All three Trust Defendants submitted uncontested affidavits in which they state that they do not own property, pay taxes, or regularly conduct business in Pennsylvania.  Def. Mot., Exs. 3-5.  None of the Trust Defendants have sufficient contacts with Pennsylvania that this Court can exercise general jurisdiction over them.

Specific jurisdiction exists if the litigation arises from the defendant's contacts with the forum state.  Courts apply a three part test to determine if there is specific jurisdiction: 1. the defendant must have purposefully directed his activities at the forum; 2. the litigation must arise out of or relate to one of those activities; and 3. if the first two requirements are met, the court may consider whether exercise of jurisdiction "otherwise comports with fair play and substantial justice."  <u>D'Jamoos v. Pilatus Aircraft Ltd.</u>, 566 F.3d 94, 102 (3d Cir. 2009).

The plaintiff alleges that he had an oral agreement with Cowell, a Bank of America employee who deals with trust administration, that the Trust would reimburse the plaintiff for payments made on Coffin's behalf.  Compl. ¶¶ 27, 29, 100.  In addition, the Trust Defendants may have exchanged e-mails with the plaintiff.  None of the plaintiffs have entered Pennsylvania in relation to their work with the Trust.  These contacts are not

enough to maintain specific jurisdiction.  See IMO Indus. v. Kierkert AG, 155 F.3d 254, 260 n.3 (3d Cir. 1998) ("[M]inimal communications between the defendant and the plaintiff in the forums state, without more, will not subject the defendant to the jurisdiction of that state's court system.").

An intentional tort, however, directed at the plaintiff and "having sufficient impact upon [him] in the forum state may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong" is satisfied."  IMO Indus., 155 F.3d at 260.  This "Calder effects test" requires three elements: 1. the defendant committed an intentional tort; 2. the plaintiff felt the brunt of the harm in the forum, "such that the forum can be said to be the focal point of the harm;" and 3. the defendant expressly aimed his tortious conduct at the forum "such that the forum can be said to be the focal point of the tortious activity."  Id. at 265-66.  The defendant must "expressly aim" his conduct at the forum state, not just at the plaintiff whose residence is in that state.  Marten v. Godwin, 499 F.3d 290, 298 (3d Cir. 2007) (dismissing case for want of personal jurisdiction even though defendant sent defamatory statements to the plaintiff in the forum state).  Although the plaintiff may feel the brunt of the harm where he resides, "the plaintiff's residence does not on its own create jurisdiction over nonresident defendants."  Id.  Even accepting that the Trust

Defendants engaged in the unlawful acts alleged by the plaintiff, there is no evidence that they expressly aimed their conduct at Pennsylvania.

Because the Court finds that it lacks personal jurisdiction over these defendants, the Court does not consider remainder of the Trust Defendants' arguments.

B.  The Judicial Defendants' Motion to Dismiss

Judges Killian and Knierim (the "Judicial Defendants") moved to dismiss under 12(b)(1), 12(b)(2), and 12(b)(6) on May 19, 2011 (Docket No. 46).  The plaintiff filed a response on May 23, 2011 (Docket No. 49).

1.  Subject Matter Jurisdiction

For the reasons explained above, the Court declines to dismiss the plaintiff's claims on the basis of the Princess Lida doctrine or decline to exercise jurisdiction under Younger.

The Judicial Defendants also argue that this Court lacks jurisdiction because of the "probate exception."  The probate exception is a judicially-created limitation on otherwise proper federal jurisdiction.  Marshall v. Marshall, 547 U.S. 293, 298 (2006).  The doctrine "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a

state probate court." Id. at 311-12. It does not, however, "bar federal courts from adjudicating matters outside those confines," such as a claim of tortious interference with an inheritance. Id.

Because the plaintiff's claims include tort claims and go beyond the disposal of property in the custody of a state probate court, the Court is not convinced that the probate exception applies here.

The Judicial Defendants argue that any claims against them in their official capacities must be dismissed pursuant to the Eleventh Amendment. Claims seeking monetary damages against the Judicial Defendants in their official capacities are barred by the Eleventh Amendment unless one of three exceptions is met. Kentucky v. Graham, 473 U.S. 159 (1985). Those exceptions are: "(1) abrogation by Act of Congress, (2) state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." M.A. v. State-Operated Sch. Dist., 344 F.3d 335, 344-45 (3d Cir. 2003).

None of these exceptions is met here. First, there has been no abrogation of Connecticut's immunity pursuant to § 1983 or RICO, the federal laws named in the plaintiff's complaint. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (section 1983); Dianese, Inc. v. Pennsylvania, No. 01-2520, 2002 U.S. Dist. LEXIS 10917 at *17-18 (E.D. Pa. June 19, 2002) (RICO).

10

Second, Connecticut has not waived its sovereign immunity. See Coger v. Connecticut, 309 F. Supp. 2d 274, 281 (D. Conn. 2004) (sovereign immunity not waived under § 1983). Finally, injunctive relief against judicial officials is only available if a declaratory decree was violated or declaratory relief was unavailable. 42 U.S.C. § 1983. There is no declaratory decree at issue in this case, and the plaintiff can seek declaratory relief. The plaintiff requests "injunctive and declaratory relief." Notably, the relief he requests is that he be paid the nearly $70,000 he believes he is due or be given an opportunity to litigate this suit. This is not prospective relief for on-going federal law violation under the third exception.

The Eleventh Amendment bars all of the claims against the Judicial Defendants in their official capacities.

The Judicial Defendants also argue that any existing claims against them in their individual capacities must be dismissed under the judicial immunity doctrine. Judges are "immune from a suit for money damages." Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir. 2000). Like other forms of immunity, judicial immunity protects the a judge from suit, not merely assessment of damages. Mireles v. Waco, 502 U.S. 9, 11 (1991). There are only two exceptions to the doctrine. First, there is no immunity when a judge undertakes nonjudicial acts. Second, there is no immunity when a judge undertakes actions, that

although judicial in nature, are "taken in the complete absence of all jurisdiction." Figueroa, 208 F.3d at 443; Mireles, 502 U.S. at 11-12.  In determining a judicial act, the court looks at factors that "relate to the nature of the act itself," such as if it is an act normally performed by a judge.  Figueroa, 208 F.3d at 443.  Even acts taken in error, maliciously, or in excess of authority do not deprive the judge of immunity.  Stump v. Sparkman, 435 U.S. 349, 356-57 (1978).

The plaintiff challenges Judge Killian's order governing reimbursement from the Trust and Judge Knierim's decision not to grant the plaintiff's requested mandamus relief.  These are clearly judicial acts.  Neither exception to the judicial immunity doctrine is met.  There is no complaint regarding any nonjudicial acts undertaken by either judge.  There is also no allegation that either judge acted outside his scope of jurisdiction.  The plaintiff alleges that the judges' actions amounted to unlawful seizure of his property and a criminal proceeding against him.  This, however, is the plaintiff's characterization of the effect of the judges' actions and does not defeat the absolute immunity provided by the doctrine.

Thus, the judicial immunity doctrine bars any claims against the Judicial Defendants in their individual capacities.

Because the Court finds that claims against the Judicial Defendants should be dismissed under these doctrines,

the remainder of the Judicial Defendants arguments are not considered here.

C.  <u>Defendant Glenn Coe's Motion to Dismiss</u>[3]

Defendant Coe filed a motion to dismiss under 12(b)(6) on March 11, 2011 (Docket No. 31). The plaintiff filed a response to this motion on March 17, 2011 (Docket No. 40). The plaintiff alleges five claims against Coe, each of which the Court considers.

The plaintiff brings a § 1983 claim against Coe. A § 1983 claim has two elements. First, the conduct must be committed by a person acting under color of state law. Second, the conduct must deprive a person of rights secured by the Constitution or federal law. 42 U.S.C. § 1983. A person is a state actor if he is a state official, acted with significant aid from a state official, or his conduct is chargeable to the state. <u>Angelico v. Lehigh Valley Hosp.</u>, 184 F.3d 268, 277 (3d Cir. 1999). At most, Coe was an attorney licensed by the state of Connecticut and an officer of the court. Being an attorney is alone insufficient grounds for Coe to be considered a state

---

[3] In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009). Disregarding any legal conclusions, the court should determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief." <u>Id.</u>; <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).

actor. Id. The first element of § 1983 is not met.

The plaintiff also alleges a violation of 42 U.S.C. § 1985. That law applies to deprivation of rights on the basis of racial or otherwise class-based discriminatory animus. Brown v. Philip Morris, Inc., 250 F.3d 789, 805 (3d Cir. 2001). The plaintiff has not alleged that he was subject to racial or class based discrimination and therefore cannot state a claim under § 1985.

The plaintiff alleges the defendants violated the Racketeering Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961. In order to make out a claim under RICO, there must be an enterprise which is conducted through a pattern of racketeering activity. Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1991). Here, the plaintiff has not identified either an enterprise or a pattern of activity separate of predicate RICO activity. The supposed enterprise is the conspiracy of the defendants to deprive the plaintiff of the money he claims he is due. However, "[a] short-term scheme threatening no future criminal activity" does not meet the pattern requirement of RICO. Id. at 1412.

Finally, the plaintiff alleges both negligent and intentional infliction of emotional distress. In Pennsylvania, a claim of negligent infliction of emotional distress requires the plaintiff to show either physical impact to himself or that he

witnessed physical injury to a close family member. <u>Sinn v. Burd</u>, 486 Pa. 146, 152, 172-73 (1979). The plaintiff alleges no physical impact to either himself or a close family member. In addition, to prevail, the plaintiff must show "manifestation of physical injury." <u>Robinson v. May Dep't Stores Co.</u>, 246 F. Supp. 2d 440, 444-45 (E.D. Pa. 2003). The plaintiff does not allege any physical injury resulting from the defendant's actions. The plaintiff fails to state a cognizable claim for negligent infliction of emotional distress.

In Pennsylvania, to make out a claim for intentional infliction of emotional distress, a plaintiff must meet the minimum elements described by the Restatement (Second) of Torts § 46. <u>Taylor v. Albert Einstein Med. Ctr.</u>, 754 A.2d 650, 652 (Pa. 2000). The Restatement says: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." Conduct is outrageous when it is "beyond the bounds of decency and intolerable in a civilized society." <u>Cimildoro v. Metro. Prop. & Cas. Insur. Co.</u>, No. 09-1907, 2010 U.S. Dist. LEXIS 22021 (E.D. Pa. Mar. 8, 2010). The plaintiff alleges that Coe interfered with his relationship with his patient, forced his patient to sign a medical disclosure form, and otherwise participated with the other defendants in denying the plaintiff money he was due. None of this conduct rises to the level of

"outrageous." The plaintiff fails to state a claim for intentional infliction of emotional distress.

    D.    Plaintiff's Motion to Dismiss the Coffin Trust and Add Unnamed Trustees as Defendants

On April 17, 2011, the plaintiff sent the Court a motion seeking to dismiss the Coffin Trust and to name unidentified trustees as defendants. On April 19, 2011, the plaintiff sent the Court an amended motion seeking the same. The Trust Defendants sent the Court a letter opposing this request on May 2, 2011. None of these documents were docketed on ECF. The plaintiff then filed a document which asked the Court to strike the Trust Defendants' May 2 letter (Docket No. 44). The Court denied in part the motion to strike, but granted the motion insofar as the Court will consider the plaintiff's arguments in rely to the Trust Defendants' opposition.

The Trust can be dismissed as a defendant. The plaintiff can dismiss a claim without a court order under Rule 41(a)(1)(A) so long as it is before the defendant has answered, which is the case here.

The plaintiff has already amended his complaint once, as allowed by Rule 15. The Court can grant leave to amend the complaint, and should do so when justice so requires. See Fed. R. Civ. P. 15; Foman v. Davis, 371 U.S. 178, 182 (1962). The Trust Defendants ask the Court to consider the arguments set

forth in their motion to dismiss. Given the resolution of that motion, the Court finds that amending the complaint to add the unnamed defendants would be futile as the plaintiff could not withstand a motion to dismiss that complaint. Id. (listing futility of amendment as a reason for denial of leave to amend).

The Court will grant the plaintiff's motion to dismiss the Trust as a defendant but will not allow the plaintiff to add new defendants at this point.

### E. The Plaintiff's Motion to Reconsider

The plaintiff asks the Court to reconsider his motion for sanctions under Rule 11, which the Court denied on May 31, 2011 (Docket No. 55).

A judgment may be altered or amended if the party seeking reconsideration shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). There are no intervening changes in controlling law, nor new evidence which was unavailable when the Court entered judgment. The plaintiff alleges that the Court's denial of his motion assisted the defendants by foreclosing additional discovery. This is not an error of fact or law which merits the Court's reconsideration of

the decision.

        An appropriate order shall issue.